### FLETCHER *v.* NEW YORK LIFE INS. CO.*

*(Circuit Court, E. D. Missouri. April 10, 1882.)*

1. INSURANCE—APPLICANT MUST ACT IN GOOD FAITH.

   A party applying for insurance is bound to answer questions concerning facts material to the risk truthfully.

2. APPLICATION—PRESUMPTION AS TO KNOWLEDGE OF CONTENTS.

   Every one who signs an application for insurance is presumed to know its contents.

3. SAME—RULE WHERE IT CONTAINS FALSE ANSWERS.

   Where the application for insurance contains false answers concerning facts material to the risk, no suit can be maintained upon the policy issued to the applicant, unless it can be shown that the applicant's answers were true; that the false answers were inserted by an agent of the insurance company without the applicant's knowledge; and that the applicant signed the application under the impression that it contained his answers as given.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

**4. SAME—BURDEN OF PROOF.**

In such cases the burden of proving that the answers actually made by the applicant were true, and that he signed the application under the impression that they had been correctly reduced to writing, is upon the party seeking to enforce the policy.

Suit on a policy of insurance upon the life of C. S. Alford, deceased, by his executor, Thomas C. Fletcher, for $10,000, and interest.

The defendant alleged in his answer, and it was proved on the trial, that said assured made a written application for insurance upon his life, and that a copy of the application was attached to and made a part of said policy when it was issued; that said application was signed, and contained the following questions and answers, viz.:

"Has the party [meaning said Alford] had or been afflicted since childhood with any of the following complaints?" mentioning, among others, "diseases of the  *  *  *  kidneys." *Answer.* "No."

"Name and residence of person's [meaning said Alford's] usual medical attendant. On what occasions and for what diseases have you required his attendance and advice?" *Answer.* "Has none."

Both of which answers defendant alleges to have been false, and avers that said Alford had previously been afflicted with *diabetes*, and had a usual medical attendant, who had attended him on sundry occasions and treated him for serious diseases.

The plaintiff, in reply, alleged that the application referred to in the answer was not written by said Alford, but by a certain agent of the defendant, who induced Alford to make it, and that the answers were written in said application by said agent to suit himself, and not as said Alford made them, and that the answers made by Alford were true; that Alford's signatures were not attached to the application as a verification of the answers therein, but at the request of said agent were signed and affixed to said paper to identify the same, and the person to whose use and benefit the policy was to issue, and that the original paper, of which a copy purports to be attached to said policy, is not said Alford's act and deed.

The case was tried before a jury.

The plaintiff introduced evidence at the trial tending to show that said Alford did not give the answers contained in said application, but, when asked if he had had any disease of the kidneys, answered that he had had *diabetes;* and when asked as to his usual medical attendant, etc., had answered truthfully, and referred the agent who propounded the questions and wrote down the answers to his family physician, and told him to inquire of said physician, and

that he would give him full particulars, and had signed the application supposing that his answers had been correctly reduced to writing.

*Carr & Reynolds*, for plaintiff.

*Overall, Judson & Tutt*, for defendant.

TREAT, D. J., *(charging jury.)* Contracts of insurance are contracts of public good faith. In other words, a party applying to an insurance company must state truthfully the matters on which the risk is based, so that the company may determine whether it will undertake the risk or not. On the other hand, the company, when it does take a risk on the facts correctly stated to it, if a loss occurs, must pay the loss. You will, therefore, consider, in all controversies between an insurance company and the party assured, that you are dealing honestly and fairly, according to the terms of these contracts. In these insurance contracts, as in all other contracts, persons are held to the obligations which they assume in regard to that. Whether it be a corporation on the one side, or a private individual or natural person on the other, the same rule must prevail. But when a supposed contract has been entered into between two parties, whether natural persons or corporations, and there is an element connected therewith, as of fraud, whether the contract should not be held either obligatory originally, or be avoided,—fraudulent questions entering into it,—juries have to determine that matter. Therefore, I take it for granted, in this case, you will deal between this corporation on the one side, and the representatives of the deceased on the other, just as if the contract were between two natural persons.

It having been admitted that the deceased died of *diabetes*, and that he had at the date of the application said disease, and had previously had said disease, and it being also admitted that he had a usual medical attendant, who had treated the deceased for said disease, and that his answers to the questions were material to the risk, there is for the consideration of the jury the determination only of this essential fact, the burden of proving which is on the plaintiff, viz., whether the deceased (Alford) ever answered the questions presented written down in the application, which answers, as so written down, are admitted to be false and material.

Every one who signs a document, like the application in this case, is presumed to know what he signed, and is to be held thereto, unless he can show, by competent evidence, that he answered the questions truthfully, and not as written down, and signed the application believing that the truthful answers made by him were correctly writ-

ten, and contained in the application by him signed. Therefore, the plaintiff is not entitled to recover, unless he has proved that the signature of Alford to the application was obtained from him on the belief that he (Alford) was signing a written statement which contained the truthful answers which he had really made to the question put to him, which answers were falsely written down unknown to him (Alford) when he attached his signature to the application.

If the plaintiff recovers, the verdict must be for $10,000, with interest at the rate of 6 per cent. from the date of proof, submitted say from February 10, 1881.

If, therefore, the signature of Alford was obtained, as stated, without knowledge on his part that his answers were falsely recorded, the plaintiff is entitled to recover; but, on the other hand, if his signature was not thus fraudulently procured, the verdict must be for the defendant.

Verdict for plaintiff for $10,000, with interest at the rate of 6 per cent. from February 10, 1881.